**IN THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JOANNE CURREN, | : : : : | CIVIL ACTION NO.: _____ |
| Plaintiff, | : : | *QUI TAM* COMPLAINT FOR VIOLATIONS OF FALSE CLAIMS ACT, |
| v. | : : | 31 U.S.C. §§3729-3731 |
| DENVER HEALTH MEDICAL CENTER, and DENVER HEALTH & HOSPITAL AUTHORITY, | : : : : | **FILED UNDER SEAL** |
| Defendants. | : : | JURY TRIAL DEMANDED |

**COMPLAINT**

The United States of America *ex rel.* JoAnne Curren states as follows for its Complaint against Defendants Denver Health Medical Center and Denver Health and Hospital Authority (collectively "Defendants"):

**I.   NATURE OF THE CASE**

1. This is an action by the United States of America, by and through the Relator-Plaintiff JoAnne Curren (hereinafter "Curren"), against Defendants to redress violations of the False Claims Act, 31 U.S.C. §§ 3729-3731. Additionally, part of this action is brought on Relator-Plaintiff's own behalf against Defendants, pursuant to the anti-retaliation provisions in the federal False Claims Act, 31. U.S.C. § 3730(h). This action is brought in camera and under seal as required by 31 U.S.C. § 3730(b)(2).

2. Defendants have engaged in unlawful activities in connection with wrongfully obtaining Medicaid and Medicare reimbursements from at least 2006 though present day.

3. Defendants' unlawful activities include principally, but without limitation, the miscoding and/or misclassification of outpatient "observation" services as more expensive inpatient hospital stays.

4. The Defendants' purpose for these unlawful activities is, and has been, to obtain artificially inflated health care insurance reimbursements from the federal government through the Medicare and Medicaid programs.

5. In particular, Defendants' fraudulent activities take the form of presenting claims, causing claims to be presented, billing false claims, causing false claims to be billed, creating false documents, using false documents, and conspiring to bill fraudulently coded and/or improperly classified inpatient services in order to obtain payment from the United States through its Medicare and Medicaid programs.

6. In addition, Defendants retaliated against Relator-Plaintiff by terminating her employment after she uncovered and reported the complained of fraudulent billing and urged Defendants to self-report the improprieties to the federal government.

## II. JURISDICTION AND VENUE

7. This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 through 3730; (ii) pursuant to 28 U.S.C. §1331, which confers federal subject matter jurisdiction.

8. This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a

Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

9. To the extent that there has been a public disclosure unknown to Relator-Plaintiff Curren, she is an original source under 31 U.S.C. §3730 (e)(4). Ms. Curren has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing a *qui tam* action based on the information.

10. This court has jurisdiction over Defendants under 31 U.S.C. §3732(a) because the Defendants are authorized to transact business in, and are now transacting business in this District. In addition, acts proscribed by 31 U.S.C. §3729 have occurred in this District.

11. Venue is proper in the United States District of Colorado because Defendants conduct business in this District through their health service business.

### III. PARTIES

12. The United States of America is the plaintiff for whom recovery is sought for false and fraudulent claims submitted to federally funded government programs.

13. Relator-Plaintiff JoAnne Curren is a citizen and resident of the State of Colorado. She brings this action on her own behalf and on behalf of the United States pursuant to 31 U.S.C. §3730(b)(1) and § 3730(h).

14. Relator-Plaintiff Curren is a Certified Public Accountant with fifteen years of experience in government accounting and auditing. She was employed by the Defendants as an Internal Auditor. Prior to her discharge for having reported the complained of fraud, Ms. Curren served the Colorado Division of Insurance as a

Financial Examiner where she routinely conducted compliance audits and made corrective action recommendations on behalf of the State of Colorado.

15. Denver Health Medical Center ("DHMC") is 500-bed, acute care hospital located in Denver, Colorado. DHMC is Colorado's primary "safety net" hospital and has been designated by the Centers for Medicare and Medicaid Services ("CMS") as a Disproportionate Share Hospital ("DSH") and, as such, receives a Medicare and Medicaid DSH payments.

16. Defendant Denver Health & Hospital Authority ("DHHA") is a health care system in the State of Colorado. The medical system's primary facility is the Denver Health Medical Center. DHHA also includes a network of neighborhood, school-based, and specialty health clinics, a poison and drug center, a medical health plan, and a 911 response system for Denver County. DHHA has research and educational operations, and it houses the Rocky Mountain Center for Medical Response to Terrorism, Mass Casualties and Epidemics, as well as the Colorado Biological, Nuclear, Incendiary, Chemical and Explosive (BNICE) Training Center.

## IV.   BACKGROUND

### A.   Defendants' Recruitment and Promotion of Relator-Plaintiff Curren

17. Relator-Plaintiff Curren began working for the Colorado Division of Insurance ("CDI") as a Financial Examiner in April 1996. In 2000, CDI assigned Ms. Curren to perform the 1999 audit of Defendants' HMO, Denver Health Medical Plan (DHMP). This was the first audit for DHMP since it's inception in 1997. While conducting that audit, Relator-Plaintiff worked closely with DHMP manager, Pamela Senneff.

18.     Thereafter, CDI promoted Relator-Plaintiff Curren to the position of senior examiner and she then assumed oversight of DHMP.  In the years that followed, Ms. Curren developed a close working relationship with DHMP's manager, Pamela Senneff.

19.     In early 2005, DHMP approached CDI for permission to begin offering a Medicare HMO product.  Although CDI does not regulate Medicare, an insurance company must get approval from CDI before offering a new product and any brokers marketing that product must be licensed by the Division.

20.     In April 2005, DHMP approached Relator-Plaintiff Curren about joining the company as a financial analyst to monitor DHMP's new Medicare product.  After several months of detailed discussions, Ms. Curren ended her lengthy public service career when she accepted an offer to join DHMP as its first Medicare Financial Analyst in September 2005.

21.     Two years later, in or about September 2007, Denver Health Medical Center's internal audit manager approached Relator-Plaintiff Curren and asked her if she would accept a promotion to work in DHMC's Integrity Office as an internal auditor. Relator-Plaintiff Curren accepted this promotion in October 2007.

### B.    Overview of Defendants' Fraudulent Activities

22.     In September 2008, DHMC's Audit Manager, Patricia DeArmey, directed Relator-Plaintiff Curren to perform an operational review of inpatient versus observation admissions to determine if the hospital had any exposure with regard to upcoming DRG education audits being performed by the Colorado Department of Health Care Policy and Finance.

23. In December 2008, Relator-Plaintiff Curren submitted a consolidated draft report to Ms. DeArmey which revealed that DHMC was improperly coding a significant number of "observation" patient services as "inpatient" stays and that this miscoding/misclassification was resulting in overbilling to Medicare and Medicaid whereas inpatient stays are reimbursed by Medicare and Medicaid at a higher rate than observation services.

24. DHMC's Audit Manger, Patricia DeArmey, immediately took issue with Relator-Plaintiff's draft report. Specifically, Ms. DeArmey criticized Ms. Curren's use of words suggesting that Medicare and Medicaid had been overbilled and then proceeded to report the issue to DHMC's Director of Internal Audits, Joseph Masi, and DHMC Chief Executive Officer, Patricia Gabow.

25. Shortly thereafter, Ms. DeArmey instructed Relator-Plaintiff Curren to rewrite her report so that the Medicare and Medicaid analysis were separate and to eliminate any wording that would suggest that the government had been overbilled. Ms. DeArmey also objected when Relator-Plaintiff suggested that the reports should include reference to DHMC's need to "self-report" these billing improprieties to the Centers for Medicare and Medicaid Services ("CMS").

26. Relator-Plaintiff reluctantly followed Ms. DeArmey's orders and re-submitted sanitized versions of the Medicare and Medicaid Audit Reports concerning "Inpatient versus Observation Admissions".

27. According to Relator-Plaintiff Curren, the data underlying her December 2008 Medicare and Medicaid audit reports indicate that Defendants have been miscoding

6

and/or misclassifying observation services as more expensive inpatient stays from at least 2006 to the present.

28.     Upon information and belief, Defendants have not self-reported this fraudulent activity to CMS or any other governmental agency even though they were advised to do so.

29.     Prior to reporting the complained of billing improprieties to Defendants, Relator-Plaintiff Curren had been a model employee.  However, shortly after having submitted her draft reports as detailed above, Defendants began to criticize her work and then, on January 27, 2009, proceeded to terminate her employment in blatant retaliation for having cast light on their unlawful billing practices and refusal to self-report.

### C.    The Medicare and Medicaid Programs

30.     Defendants' miscoding and/or misclassification of hospital observation services as more expensive inpatient stays was used to artificially inflate payments received through both the federal government's Medicare and Medicaid programs.

31.     Medicare is a federal program created by the Social Security Act, as amended, 42 U.S.C. § 301 *et seq.*, which provides health insurance for individuals from at least age 65 years and to certain disabled persons under the age of 65.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS") and funded through HHS.

32.     Medicare includes coverage under four components:  Parts A through D. Coverage under Part B includes services rendered by doctors, outpatient hospital care, and other medical services not covered by other Parts.  The Part B program is funded by

7

premiums paid by Medicare beneficiaries enrolled in the program and supplemented by contributions from funds provided and paid by the United States government.

33. The Part B program pays claims for reimbursement submitted by or on behalf of Medicare beneficiaries for a portion of the reasonable charges of certain medical services, which are determined to be reasonable and necessary under §§ 1861(s) and 1842(a)(1) of the Social Security Act, 42 U.S.C. §§ 1395x(s) and 1395u(a)(1). CMS determines the types of services covered, and therefore reimbursable, based upon a fee schedule.

34. Medicare assigns provider numbers to health care providers. The use of these provider numbers allows the health care providers to bill for services rendered to patients who are eligible to receive medical services under the Part B program. A claim for inpatient services identifies the name of the Medicare beneficiary, the name of the referring physician, the date the service was provided, the CPT codes (defined in detail below) of the tests performed, and the ICD-9 number (diagnosis code) corresponding to the medical condition for which the test is needed.

35. Medicaid, Title XIX of the Social Security Act (42 USC §§ 1396-1966v), is the United States health program for eligible individuals and families with low incomes and resources. It is a means-tested program that is jointly funded by the states and federal government, and is managed by the states. Among the groups of people served by Medicaid are eligible low-income parents, children, seniors, and people with disabilities.

36. Health care providers for all federal and state health care benefit programs, including Medicare and Medicaid, use a uniform system of coding to report professional services, procedures, supplies, and diagnosis. Medical services are assigned a number

8

and are listed in certain publications. This system is administered and coordinated by CMS and is based upon the American Medical Association's Current Procedural Terminology codes.

37. CMS defines observation care as "a well-defined set of specific, clinically appropriate services that include ongoing short-term treatment, assessment, and reassessment, that are provided before a decision can be made regarding whether a patient will require further treatment as an inpatient, or may be safely discharged."

38. Observation status is commonly assigned to patients with unexpectedly prolonged recovery after outpatient surgery, and to patients who present with unexpectedly prolonged recovery after outpatient surgery, and to patients who present to the emergency department and who then require a significant period of treatment or monitoring before a clinical decision is made concerning their next placement.

39. CMS requires defendants to follow specific procedures when changing a patient from in patient to observation status, if the change is necessary for billing purposes.

40. At all times relevant hereto, Defendants were participating providers under the federal health care programs, including, but not limited to, Medicare and Medicaid.

41. At all times relevant hereto, Defendants were aware that the government relied initially on the truth and accuracy of the providers' claims to authorize payment of government funds for in patient services.

V. **DEFENDANTS' FALSE CLAIMS MISCLASSIFICATION SCHEMES**

42. Defendant DHMC employed Relator-Plaintiff Curren as a Financial Analyst beginning in September 2005. As detailed at length above, DHMC promoted Relator-Plaintiff Curren to the position of Internal Auditor in the fall of 2007.

43. In December 2008, Ms. Curren presented Defendants with a draft audit report detailing her review of both Medicare and Medicaid claims with respect to inpatient versus observation admissions. The report was conducted in accordance with the Standards for the Professional Practice of Internal Auditing and involved a review of Medicare and Medicaid patient records from DHMC for years 2006, 2007, and 2008.

44. Relator-Plaintiff Curren discovered that Defendants were routinely miscoding and/or misclassifying Medicare and Medicaid patients at DHMC as inpatients when, in fact, they were not.

45. Defendants' Medicare and Medicaid reimbursements are greater for "inpatients" as opposed to those listed as on "observation" such as, for example, patients being monitored in the DHMC emergency room prior to diagnosis and out-patient release.

46. DHMC is a Disproportionate Share Hospital ("DSH") and, as such, receives additional reimbursements from Medicare and Medicaid for serving indigent patient populations.

47. DSH payments are calculated using a complicated formula which includes, in part, multiplication of the number of inpatient days reported.

48. As such, the more inpatient days DHMC reports, the greater the DSH payments it receives from the federal government.

49. Defendants' miscoding/misclassification scheme has caused the federal government to pay not only for artificially inflated numbers of "inpatient stays", but also artificially increased DSH payments.

50. To conform to CMS requirements, Defendants' Utilization Management ("UM") unit is supposed to review admissions and correct any miscoding and/or misclassification of patient status vis-à-vis observation services versus inpatient stays.

51. After discovering the complained of billing improprieties, Relator-Plaintiff's analysis also revealed that Defendants' UM unit did not perform admission reviews and did not correct the false records involving the miscoded/misclassified inpatient stays in over 30% of all such cases.

52. In fact, Relator-Plaintiff Curren's findings establish that Defendants' UM unit knew, in many cases, of the overcharges but did not correct Defendants' records.

53. Defendants have and continue to present or cause to be presented false claims for inpatient stays when Medicare and Medicaid should be billed at a lesser rate for observation services.

54. Defendants have knowledge of the continuing and improper submission of false claims to Medicare and Medicaid regarding Defendants' false inpatient designations, know and have known that those claims were fraudulent and false, and failed to disclose those submissions with the intent to fraudulently secure benefits and payments when no such benefits or payments are authorized by law.

55. Defendants' fraudulent misconduct has directly caused the federal government to suffer damages in the tens of millions of dollars during the time period in question.

56. Defendants' fraudulent activities and statements as described herein materially damaged the United States and were material to the false claims submitted for payment to the United States.

## VI. LEGAL CLAIMS

### COUNT I

**Violations of False Claims Act, 31 U.S.C. §3729(a)(1)(A)**
**Presenting or Causing to be Presented False Claims**

57. Relator-Plaintiff re-alleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

58. This Count is brought by Relator-Plaintiff in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendants' violations of 31 U.S.C. §3729 *et seq.*

59. By virtue of the above-described acts, among others, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, and upon information and belief, continues to present or to cause to be presented false or fraudulent claims for payment or approval for government reimbursement.

60. Specifically, Defendants submitted or caused to be submitted false or fraudulent claims to the federal government for payment of services relating to inpatient services performed, administered, and/or processed by Defendants as set forth above.

61. These claims were fraudulent because the inpatient services that Defendants claimed were performed and were medically necessary, were, in fact, either not specifically ordered by the treating physician, not actually performed, and/or deceptively coded.

62. Plaintiff United States, unaware of the falsity of the claims and/or statements which the Defendants submitted and/or caused to be submitted to the United States, and in reliance on the accuracy thereof, paid said claims that would otherwise not have been paid and/or were ineligible for payment.

63. The amounts of the false or fraudulent claims to the United States were material. Plaintiff United States, being unaware of the falsity of the claims and/or statements caused to be made by defendant, and in reliance on the accuracy thereof paid and may continue to pay for Defendants' unlawful claims for reimbursement. By reason of Defendants' wrongful conduct, the United States has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each such false claim presented or caused to be presented by Defendants in accordance with 31 U.S.C. § 3729.

## COUNT II

### Violations of the False Claims Act, 31 U.S.C. §3729(a)(1)(B)
### Creation or Use of False Statements or Records to Obtain Payment

64. Relator-Plaintiff re-alleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

65. Through the above described acts and otherwise, Defendants knowingly made, used, or caused to be made or used, material false records or material statements to get false or fraudulent claims paid or approved by the Government, and upon information and belief, continue to make, use, or cause to be made or used, material false records or material statements to get false or fraudulent claims paid or approved by the Government, for the false in patient services.

66. The amounts paid on the false claims by the Government for Defendants' miscoded/misclassified inpatient stays were material. In addition, Defendants created and/or used false records and/or statements material to the decision to reimburse their false claims. In other words, the false records and/or false statements influenced or had a natural tendency to influence or were capable of influencing the Government or other payors to pay government money to Defendants.

67. Plaintiff United States, unaware of the falsity of the records or statements made, used, or caused by Defendants, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for health services that would not have been paid or approved in any part if the truth were known.

68. By reason of Defendants' wrongful conduct, the United States has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each such false statement made or used by Defendants in accordance with 31 U.S.C. § 3729.

## COUNT III

### Violations of the False Claims Act, 31 U.S.C. §3729(a)(1)(C)
### Conspiracy

69. Relator-Plaintiff re-alleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

70. By the foregoing acts and omissions, Defendants' employees and agents conspired with one another and others to commit violations of the False Claims Act, 31 U.S.C. §3729(a)(1)(A through D) and 31 U.S.C. § 3730(h).

71. By the foregoing acts and omissions, Defendants took actions in furtherance of their conspiracies, including but not limited to the unlawful billing of false inpatient

services, the concealment of their fraudulent activity, the unlawful retention of illegally obtained government funds, and the termination of Relator-Plaintiff Curren.

72. As a consequence of Defendants' conspiratorial conduct, the United States has suffered significant, material financial damages in an amount to be proved at trial.

73. Furthermore, the United States is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each unlawful act of Defendant violative of 31 U.S.C. §3729(a)(1)(C) in accordance with 31 U.S.C. § 3729.

## COUNT IV

### Violations of the False Claims Act, 31 U.S.C. §3729(a)(1)(D)
### Concealment or Avoidance or Decrease of an Obligation to Pay

74. Relator-Plaintiff re-alleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

75. By the foregoing acts and omissions, Defendants concealed material facts to defraud the United States Government by getting false or fraudulent claims allowed or paid in violation of the False Claims Act, 31 U.S.C. §3729, *et seq*.

76. By the foregoing acts and omissions, Defendants took actions in furtherance of their concealment, including but not limited to the incorporation, continuation, and cover-up of unlawful and deceptive coding and billing procedures.

77. By the foregoing acts and omissions, Defendants unlawfully retained government money.

78. As a consequence of Defendants' concealment, the United States has suffered significant, material financial damages in an amount to be proved at trial.

79. Furthermore, the United States is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each unlawful act of

Defendants violative of 31 U.S.C. §3729(a)(1)(D) in accordance with 31 U.S.C. § 3729.

## COUNT V

### Violations of the False Claims Act, 31 U.S.C. §3730(h)
### Anti-Retaliation

80. Relator-Plaintiff re-alleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

81. From as early as the start of her employment in 2005, while employed by Defendants, Relator-Plaintiff Curren was engaged in conduct protected under the 31 U.S.C. § 3730(h).

82. Defendants knew or suspected that Relator-Plaintiff Curren was engaged in conduct protected under 31 U.S.C. § 3730(h).

83. Defendants threatened, harassed, and discharged Curren because of her report of violations, her report of fraudulent billing and her efforts to correct Defendants' unlawful activity violating the federal False Claims Act.

84. On January 27, 2009, Defendants terminated Relator-Plaintiff's employment. Relator-Plaintiff was terminated because Defendants believed or suspected that Relator had been engaging in conduct protected by 31 U.S.C. § 3730(h).

85. Relator-Plaintiff has suffered significant economic and non-economic damages as a result of her wrongful termination. The amount of these damages is to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Relator-Plaintiff, on behalf of herself individually, and on behalf, and in the name, of the Government of the United States, demands and prays that judgment be entered against the Defendants as follows:

    i.    Ordering Defendants to cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729, *et seq*.

    ii.    On Counts I through IV, award three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of the maximum amount allowable for each act in violation of the False Claims Act, as provided in 31 U.S.C. § 3729.

    iii.    Award the Relator-Plaintiff the maximum amount allowable under the False Claims Act (31 U.S.C. 3730(d)).

    iv.    On Count V, award Relator-Plaintiff all damages sustained by the Relator as a result of Defendants' unlawful retaliation, including, but not limited to compensatory damages, reinstatement, 2 times the amount of back pay, interest on back pay, compensation for special damages sustained as a result of the discrimination, and punitive damages.

    v.    Award Relator-Plaintiff all attorneys' fees and litigation costs in accordance with 31 U.S.C. § 3729 *et seq.*

    vi.    All other damages as the Court deems appropriate.

## JURY DEMAND

Relator-Plaintiff demands trial by jury on all claims.

Dated this 24th day of July, 2009.

Respectfully submitted,

**BUESCHER, GOLDHAMMER, KELMAN
& DODGE, P.C.**

__s/  Thomas B. Buescher_____
Thomas B. Buescher, #6796
1563 Gaylord Street
Denver, CO 80206
Phone: (303) 333-7751
Fax: (303) 333-7758
tbuescher@laborlawdenver.com

**KENNEY EGAN McCAFFERTY & YOUNG**
BRIAN P. KENNEY, ESQUIRE
ERIC L. YOUNG, ESQUIRE
LINDA J. STENGLE, ESQUIRE
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
Phone: (610) 940-9099
Fax: (610) 940-0284
eyoung@kemy-law.com

**Attorneys for Relator-Plaintiff**